In our cases this morning, I turn it over to Judge Newman to recognize me for a motion. So if you will recognize me for my motion, Judge Newman. Indeed, yes. Thank you. Kristen, would you please stand? I move the admission of Kristen Elizabeth Lovin, who is a member of the Bar and Good Standing in the Highest Court of California. I have knowledge of her credentials and I'm satisfied that she possesses the necessary qualifications. And I'd just like to say to my colleagues and to Kristen on a personal note that it's been a delight having her in chambers for this past year, getting to meet her mom and her sister, who she's very close to, getting the delight of interacting with her on a daily basis, her wisdom and her great advice on cases, and just having her there in general. She's decided that after a year with me, she loves clerking so much that that's what she's going to do next year too, and then we're at the District of California. But we look forward to her finally having a real job after that, and we know she will be enormously successful as a lawyer and as a person. It's been a delight, Kristen. Okay, I think the panel may vote on the motion. The panel unanimously grants the motion with pleasure. Welcome to the Bar. Please be seated. Do you solemnly swear or affirm that you will report yourself as an attorney and a counselor of this court, uprightly, according to law, and that you will support the Constitution of the United States of America? I do. The Bar of Highest Court of California feels that that is her duty. Thank you. Congratulations. The first case for argument this morning is 16-1014, Diversified Group versus United States.  I've got a visual which I now realize perhaps might have typed too small, so I brought hard copies of the visual with me. Well, you might want to focus more on your argument with the visual. Typically, they're not terribly helpful to us, and we'll have a number of questions, I'm sure. So why don't you proceed with your argument, and we'll worry about the visuals if necessary. That's what I will do, Your Honor. Thank you. May it please the court, Jasper G. Diversified Group, Incorporated, and James Haber, the foundation of the government's case, as laid out on pages 10, 11, and 38 of its brief, is as follows. Haber conceived and marketed through DGI, a tax avoidance strategy called OPS. Okay, can I just interrupt? I think we've read the briefs and understand the case. Is it your position that the OPF and FDIS are not tax shelters? It's a, OPS and FDIS are characterized by the government as strategies, global schemes. Those are not tax shelters. In fact, if you look at the statutory language of section 6111, the statutory language is contrary to what the government is arguing. The government argues that OPS is a strategy, FDIS is a strategy, they should have been registered. Section 6111 does not require registration of a strategy, a global scheme, an idea, or a concept. So what, what in your view was the tax shelter here? Was it the individual transactions between you and each individual customer, is that what we call them? That's exactly right. And did you register each of those? Not one was registered, and that's the important part of this case. In order to impose a penalty, you must have failed to file form 8264. If you look at form 8264, and that's at pages 171 through 184 of the joint appendix in this case. That form requires for each tax shelter to be reported a number of things, including the maximum aggregate amount to be contributed to the investment. The tax shelter ratio for the investment, which is how much money and property is contributed by the investor to the investment. The principal asset of the investment, and the date the principal asset was acquired. So, so I mean it seemed to me that the word investment has two quite common different usages. One is the thing into which you put your money, and the other is the money you put into it. The government's position is it not, and it seems to me, as I read the statute, it's pretty clear what the statute is saying. That the statute uses the term investment as the thing into which you are putting the money. And so when it says there has to be at least $250,000 and five contributors, the investment is either the OPS or whatever it is, and the other one. There are two investments, various people with money put their money into those, but it's the things into which the money is being put that have to be registered, if indeed they are tax shelters as the government alleges. That is absolutely correct, Your Honor, and that supports Appellant's case. How does that support your case? Because if you look at the 192 investment vehicles, generally partnerships, sometimes LLCs, you have them being invested in with, as the statute requires, money and other property. I don't know, can you just, you mentioned investment vehicles. What are you referring to, the individual transactions between the customers? Is that what you call an investment vehicle? Yes, there are 192 of them, and sometimes they're partnerships, sometimes they are LLCs or other entities, but they took place from 1999 through 2002. Yes, Your Honor. Actually, now I have, I guess, a question I hadn't really thought of before. Maybe there are three possible things here. I guess I want to know what this 192 is. Is that the number of persons, let's call them persons, natural or otherwise, that put money into something? Or are there 192 or 193 different limited liability partnerships or corporations or whatever into each of which there may be, therefore, more than 192 individuals, persons putting money in? Generally speaking, Your Honor, each of the 192 transactions involved one partnership, LLC, and generally it was one individual that was involved. So there's pretty much a one-to-one correspondence between those things? Pretty much. Okay. And so, Your Honor, getting back to your original question on what is an investment, when the Form 8264 requires to be reported the maximum aggregate amount to be contributed to the investment, and you have one LLC or partnership in 1999, and you have a totally different one in 2002, it is impossible, absolutely impossible to file a Form 8264 in 1999 to report aggregate amount to be invested, principal asset of the investment. Doesn't the statute use a term like expected to be invested in calculating, in referring to the amount? It does, and that is because the actual investment, the writing of the check, the contribution, may not occur until after the offering of interest in the investment. So the statute says you must file this form before offering interest, and the answer to when it is filed comes in the actual form. I beg this Court, before reaching a decision, please look at Form 8264. You will see that it is absolutely impossible to take a concept or a strategy like OPS and determine what the principal asset is going to be and the date the asset was acquired. We're talking about three to four years later. The dollar amount of financing, the dollar amount of cost, the tax shelter ratio, none of those can be determined when an 8264 is filed if this is just a strategy or a concept or an idea. None of those are investments. So on that theory, you would then have to bring a separate action as to each of these separate investments? No, Your Honor. In this case, because the $42 million penalty was calculated transaction by transaction, and those are also in the joint appendix. But you're questioning only one transaction. Wait, no, Your Honor. We are actually taking advantage of the divisibility doctrine, which was, I think, discussed quite ably in the CINCAS services case. I believe that two of the members of the panel were involved in that case. The idea is for a payment to be made with respect to a divisible transaction. So each of OPS and FDIS types, there was a payment made which matched the amount of penalty calculated for those two transactions. And under CINCAS, obviously a case out of this court, a test case, those are the term, that's the term, a test case takes place where a determination is made with respect to all of the other similar transactions, in this case, the 190 transactions. And this is an instance... How does that work as a matter of legal doctrine? There are, if you have two of the transactions in your terms, suppose you go through and you win, and then what happens to the other 190? The government would not, would it be subject to non-mutual issue preclusion, because the government isn't generally subject to non-mutual issue preclusion. So how does that, unless the government just says, we recognize this to be a test case, and even though we could go to another circuit, we're going to accept this. Your Honor, first of all, there can be no better description of this test case practice than in the CINCAS services case out of this court, which is referred to in our brief. But what typically happens is that when the divisible payments are made, a decision is reached by the court. At some point, generally, the government counterclaims for the rest of the amount, in this case, the 190 transactions portions, and everything is made a part of the case. And the court's decision applies to, in this case, all 192 transactions. I don't understand. Is that something they're compelled to do, or is that something you said, generally, the government does this? But what if the government, can the government decide not to do it? And if it can decide not to do it, then what happens to those, in those other 190 cases, the taxpayer has not paid the amount owed, right? That's correct, Your Honor. So if they are not part of this case, are there penalties and interest accruing to the amounts owed and not paid? And is there any way, short of the government conceding to do something it doesn't need have to do, where we left with those other 190 transactions? Your Honor, in the years that I've been involved in these cases, I've never seen the government not counterclaim for the additional amount. But to answer the court's question directly, if the issues are decided by the court with respect to two out of the 192 transactions, the legal issues are the same for all of the transactions. And I think collateral estoppel, I think collateral estoppel would apply. And that's because maybe I was wrong when I referred to non-mutual issue preclusion. In fact, since it's just the diversified group and Haber, that is the penalized party in all of them, they would in fact be mutual issue preclusion, right? I think that it would probably be res judicata. Because the same thing... You may not want to say that. You don't want to say that it's the same claim, do you? Well, in this case, Your Honor... But it may be the same issue. It is the same. It is the same issue. The central issue that applies to all of these transactions is when you have offsetting options, buy and sell options, and only a small net is actually invested by the investor, can the government take just one and apply the 1% to that? And that's how you get $42 million instead of less than $2 million. That issue applies to every last one of the 192 transactions. Can I... This is just really basic. We don't get many of these tax cases. You're acknowledging that... I guess it's a question. Are you acknowledging that none of the taxpayers of the 192 ever filed a Form 8264, never registered? That is correct, Your Honor. So how would they not be liable for not registering their tax shelters, notwithstanding... What is it you're going to argue? That they didn't have to? Well, the very first argument that applies to all 192 transactions is that the tax shelter ratio, which must be greater than 2 to 1, was not met. And that's on the merits. But the tax shelter ratio must be greater than 2 to 1. That tax shelter ratio was incorrectly calculated by the government. If we went on that issue, all of the 192 transactions were not tax shelters under Section 611. But on that issue, is there the difference if you aggregate all the transactions, then you meet the test ratio, but if you deal with them divisibly, you do not? No, Your Honor. That issue would be the issue of whether these were tax shelters... Before you get to substantial investment, you first have to decide, is the tax shelter ratio test met? And that tax shelter ratio is determined transaction by transaction. You take each, in this case, litigation vehicle... Excuse me. You take each vehicle, each investment vehicle. You calculate the amount of deductions or credits that are being offered. You compare that to the amount of money and property that was contributed. And you determine, was the tax shelter ratio test met for that transaction? Again, each of the 192 transactions over four years had its own separate tax shelter ratio. That is why. That's one of the reasons why a Form 8264 could not have been filed in 1999 with respect to a 2002 transaction. You didn't know what the tax shelter ratio was going to be for that transaction four years later. I think we have your argument. I'll restore a few minutes for rebuttal. Thank you. Good morning. Good morning. May it please the court. I'm Francesca Ugolini, counsel for the United States. I'd like to respond to the appellant's principal argument in this case that each instance of filing a Form 8264 was a standalone registration such that the penalty applied... The 6707 penalty applies distinctly to each failure to file a form. This argument has no basis in the statutory language. Does that point, the point you're just making, agree that there should have been 192 forms filed? No. In fact, that is... The appellants have contended that each instance of selling one of these tax shelters required a separate form. Under the regulations... Well, under the statute, you file the tax shelter before any sales are even made. Then if you make further sales of the same arrangement and those sales differ with respect to one of five categories... This is a list that's in the regulations. Those categories include principal asset, financing methods, tax shelter ratio. Then the tax shelter organizer is required to file another form notifying the IRS that we made a sale. This piece is different. The regulations explicitly say that notwithstanding the multiple filing of these forms, that these... I'd like to pull up the exact language because I think it's important here. Can we start? You're a little ahead of me in terms of logistics. You're required to file the 8264 when? When you create this tax shelter in this circumstance before they had any customers for it? The statute says that the registration, any tax shelter organizer is required to register not later than the day on which the first offering for sale of interests in such tax shelter occurs. You're asking us to presume the merits of the case. Don't we have to cross the bridge first of the propriety of a test case? The court declined to treat it that way and therefore the merits weren't decided. So how do we get to the stage? And particularly, what's wrong with the test case theory? You expect the taxpayer to disgorge $150 million in order to get into court to be told that you didn't have to pay it? The basis for the government's argument here is the full payment rule, which this court and the Supreme Court have acknowledged are a condition on the government's waiver of sovereign immunity in a tax refund suit. Well, we aren't told yet whether it isn't before us to decide whether this applies to all of the other, whatever it is, 81 investors. We have a test case that is presented as severable and the tax was paid, refund is requested, or the penalty was paid, a refund is requested. And isn't that enough to cross the jurisdictional barrier for review of the merits of the specific case that's before us? Well, I think Your Honor just said that the case was presented to you as severable. That is the exact question. That's the question. That's the question. Is it severable? Because if it's not severable, if Congress did not make this a severable or divisible tax,  before he gets to test the merits. That is the full payment rule from the Supreme Court's Flora case. So that is the question to be decided. Is it truly severable here? I agree. And as a test case is for a piece true severed out of the total. And the merits haven't yet been decided. So doesn't that again cross the jurisdictional barrier? Well, I think to determine whether the case is actually severable, we have to look at the statutory language. Because the case law about the divisible tax exception is rooted in how the tax or the penalty is imposed. The Supreme Court in Flora and the other courts that have recognized the exception have observed that a tax is divisible when the assessment is composed of multiple individual assessments. So the tax is actually, for example, an excise tax, is imposed $100 per sale. So the Internal Revenue Code imposes the tax on a per transaction basis. OK. No, that makes sense. And if it's decided that this is a valid assessment, then it applies to everyone. But I still keep coming back to thinking about the concept of, again, the test case on the facts for which the penalty was paid. Is, are the issues sufficiently severable to permit the Court of Federal Claims to review it? The underlying facts here are similar among all 193 shelters, which is the reason why the government treats them and why they're treated under the statute and regulations here as a single tax shelter. What are your best points under the statute, I guess, in particular, for why what I think this dispute is coming down to was, were there two shelters here or were there 192 shelters here? And in order to decide jurisdiction, we need to answer that question. Correct. So why are there two, not 192? If, well, the regulations under 6111 say that similar plans or arrangements are treated as part of a single tax shelter. If you look at the language of 6111 and 6707, it cont— And you're looking now at the regulations 301.6111? Right, 301.6111-1T. And the language specifically, it is the Q&A 22, Yeah. which says that similar investments offered by the same person or related persons are aggregated together. Investments are considered similar if they involve— I'm having a hard time, where— Oh, sure. I'm on, I've got a Westlaw printout here. This is the Q&A 22. Got it. Thank you. Okay. So in that first paragraph under A22, it says similar investments offered by the same person are aggregated together, and it explains that investments are considered similar if they involve similar principal business assets and similar plans or arrangements. I don't think there's any dispute in this case that OPS and FDIS, that all of the transactions would be considered similar to one another, whether you looked at them more broadly as a single son-of-boss shelter, or if you broke them out separately into OPS and FDIS. If you then look at, under the same regulations, this is the Q&A 48. And here's where we get specifically into this issue of the multiple forms. But this is exactly the problem that I'm trying to penetrate. You're telling us that it's essential to decide the merits of their case in order to decide whether the court has the authority to decide the merits. Well, no. Respectfully, no, Your Honor. Their argument on the merits of the case is that the transactions don't meet the definition of a tax shelter. I'm talking about your argument as well, that you must decide the merits in order to decide whether you can decide the merits. I think our argument here is the only piece that needs to be decided is whether the statute imposes the penalty on a singular failure to file, or whether the statute imposes the penalty on each instance of a failure to file one of these forms for multiple sales of these transactions. Can I take you back to where your friend spent a great deal of his time? Yes. Looking at Form 8264 and telling us how this, I think his argument was, this can't possibly have been for the ODS or the FD, whatever those names are for the tax shelter. Right. Now, what you just showed us, in fact, your question in 48 deals with filing a separate 8264. But tell us, you're saying they were required to fill out this form at the get-go. Right. Were they sold before they had any investments? Correct. And so how could you possibly fill out all these questions with regard to the value of the property, the cash, and all of this stuff? How could you know that when you haven't gotten any investments yet? Normally, when a tax shelter promoter organizes an investment, they do have an idea. I mean, they create marketing materials to market these to potential investors. So they have marketing materials that say, these are the types of assets we're going to invest in. Here it was foreign currency options. In other tax shelters, they know maybe it's going to be a piece of depreciable property. So they know, and they have these estimates. They have these ranges that they market to investors. That if you are willing, for example, in this case, the way these shelters were marketed is that a tax loss is available dollar for dollar for the amount that you are willing to spend on a long option. Now, economically, that would then be offset by the short option. But what was done here is they would first purchase this long option, contribute it to the partnership, increase their basis, not offset their basis by the offsetting liability, and then use that artificial basis to create a tax loss. So that number was knowable in advance in terms of... Was it advertised? Knowable or actually touted? Touted that the... I mean, I have not seen the marketing materials for every one of these transactions. A number of the transactions that they were penalized for in this case have been the subject of other decisions on the merits by courts of appeals that have looked at these materials. These were all marketed tax shelters where the investors were told, for each dollar you contribute towards this long option, you will get a dollar of inflated basis that will then become a dollar of tax loss. And so the amount of the tax loss was sort of up to the investor. How much they put in. And if you look at the spreadsheet that the IRS... It is in the record, and I can provide you with the site. The IRS, when it was computing the penalty here, if the penalty was 1% of the aggregate amount invested. So the IRS totaled up the amount that all of these different investors spent on a long option. And you'll see that it ranges. Almost all of them were over a million dollars. Most of them were in the tens of millions of dollar range. And then some investors contributed over a hundred million dollars. So it's really a question of how much can the investor come up with. How you could possibly fill this out in 1999, and this other stuff was going on through 2000 something or other. Does that mean that you have to keep on amending this form, filing an amended form? The regulations specifically say that if the tax shelter changes, you can amend it. But you use the same registration number because the tax shelter has already been registered. You're not required to amend it. The regulations also say that if you sell another instance of this investment to another purchaser and it varies with respect to a particular category, then file a new form. But then the regulation specifically says that these similar investments are still treated as a single tax shelter. So it unequivocally clarifies that even though multiple forms might be required to keep apprising the IRS of these investments that have been sold, they remain part of a single tax shelter. I'd just also like to respond, Judge Newman, to the point that you made about asking a taxpayer to come up with this money. I think you had used the example of $150 million to be able to come to court to test the case out. In this case, the amount is actually $24 million, which I recognize is still a substantial amount. But I'd like to point out that the appellants here- I thought it was $17 million and $24 million. The original assessment, the assessment was $42 million. But it was assessed to multiple promoters of this transaction. They are jointly and severally liable for the amount. Other promoters who are not in this case have paid that balance down. So all that's left is about $24 million. No, really what I'm trying to approach is some of the fundamentals of the due process that are involved with the position of the Court of Federal Claims in these relationships, in these tax relationships. If this taxpayer loses in the Court of Federal Claims on the merits, on the threshold merits, one can assume, although I don't know, that the other taxpayers similarly situated would also be affected. But if this taxpayer prevails, you're saying nonetheless it can't prevail unless the entire penalty for everyone else, in addition to this particular investor, is paid in advance. That's where I get stuck. I would be happy- I know there is a Supreme Court case. I cannot recall the name. I think it might be Burns. I'd be happy to send it as a 28-J letter. The Supreme Court has addressed the issue of whether this pay-first, litigate-later doctrine in federal tax law satisfies due process. They're going to litigate this particular claim, which they've paid. Which they've paid. They've paid the amount that they're seeking to litigate. What happens to everyone else is complicated. I don't want to guess how that would come out. But here, we're not permitting them even to do this. Right, and the reason we're not doing that- the reason the Court of Federal Claims would not permit them to do that is because of the full payment rule, which is part of the waiver of sovereign immunity to bring the case in the first place. They say it's divisible, and more important, that this will be a critical test with all of the elements involved. And we're saying you can't do that. And that's where I'm stuck. Right, I mean, that is- I think there are many taxpayers that have felt the same way you have in terms of the potential unfairness of the pay first, litigate later rule. But it is- They have paid. They have paid that which they're litigating. So the rule doesn't apply to this particular investor whose structure is being presented as a test case. But the question- They have paid. They've paid for one of the participants of the 193. And what they're asking for is a decision as to this one that I'm asking for a decision as to the other 192. They say it's a test case. It may very well turn out to be. We're saying you can't do that either. Right, because you can only bring a test case if the penalty is divisible in the first instance, which is the question to be decided. Can I just double check something with you? Sure. They had no ability, or did they, to go to the tax court? That is what I wanted to address. They could not go to the tax court, but they did- Because the tax court doesn't do penalties. Right, the statute that creates tax court jurisdiction does not cover a prepayment challenge to penalties. However, they did have the chance to appeal the IRS's penalty assessment to the IRS Office of Appeals, which is independent from the exam function of the IRS. The IRS Office of Appeals has broad authority to review and settle cases. And they opted not to go to appeal. So they did have some prepayment forum to challenge the method in which the penalty was computed. Okay, can I ask one more question? Sure. Suppose one got beyond jurisdiction and went to the merits here. Is your understanding, or your position, I guess, you might have a different position from the plaintiffs here, that the various merits of disputes or challenges to whether this was a tax shelter, whether ratios were met, would look different or would look the same, depending on whether one thought there were 192 shelters or two shelters? I think it would probably be the same across the board, because I think the arguments on the merits here have to do with what the IRS included or didn't include in the, quote, investment base, and the, quote, aggregated amount invested. These are terms from the statute used to compute the penalty. So I guess my understanding is that the dispute here really has to do with what's the appropriate formula for determining whether something is a tax shelter, and then what's also the appropriate formula for determining whether, or the amount of the penalty, if it is a tax shelter. And I believe that the appellants also have raised a reasonable cause defense, because there is a defense to the penalties based on reasonable cause. Thank you. Thank you. So can I ask you to return to your focus on the form 171? What is it about that form that you say cannot be filled out for each of two strategies that could always be filled out pre-acquisition of a client's money for each of 192? Maybe there's a difference in kind, but even in your view, once they put out the LLC number 141 before they've actually got somebody putting money in, that's the moment when they have to fill this out, right? To answer the question respectfully, I have two requests. The first request is that my time started at three minutes, and I believe I have five minutes. It's now working its way down. So I think I've got two more minutes. It's 10 and 5. So I think I've got 4.43. I took 10 minutes. Stop the clock. You initially indicated that you wanted to retain five minutes for rebuttal, but you ended up using virtually all of that time using the original statement. So that's why I'm giving you extra time because you've exhausted all of your other time. Thank you very much. But if you need a couple more minutes, it's more than enough. Thank you. Your Honor, please look at, in the joint appendix, A0110. That's the first page of the IRS calculations. Transaction by transaction. And then look at A171. So if you can put a finger on 110 and a finger on 171, you'll see that if you look at 110, it's not just this one short leg number that they're looking at. There's the broker fee. There's an accounting firm fee. There's a law firm fee. There are other fees. There are other second cash contributions. There are a number of things which fall into the category of amount invested by the investor and the costs. Well, let me just, I guess I have to be able to get a little clearer in my head about this. Your view is that if there were 192 shelters, let's take number 143, and they set up an LLC. And the moment they put that out, that's a tax shelter, before anybody puts any money into it, whether or not they have somebody lined up, I don't think matters. That's when they have to fill this form. That's different from the retrospective calculation of the amounts, which they can use all these retrospective numbers. So what I'm trying to understand is your position, which I think is absolutely at the heart of your case, at least as I'm hearing it, is that if you look at 8264, it makes sense for 192 shelters. It makes no sense for two shelters. And I need to understand very concretely why. Please look at 171, Your Honor. That's page one. And then page 172 of the same form, 8264. In order to calculate, for example, tax shelter ratio, you have to go to, and that's item number nine, Your Honor, on page one. Tax shelter ratio. If you turn to page two, you need to fill out a worksheet with respect to everything that's required to calculate tax shelter ratio. Look at part Roman numeral two, investment base, cash contributed, adjusted basis of property contributed. All of these things you cannot possibly know, Your Honor, in 1999 with respect to a 2002 transaction. If you go back to A110. But how do you know it with respect to transaction number 143 when you create the, are these LLCs? Is that what you call them? Some of them LLCs, some of them partnerships. Partnerships. Before you actually, do those specify this is the amount that's going to come in? I don't know whether Toronto's putting in a million dollars or Prost is or somebody, but it's a million dollars. Yes. And I can fill all that out even before. No, you can fill it out in 2002 right before Judge Toronto puts in his money. Before there is an adjusted basis of property contributed. That's when you know what to put down on the page two worksheet, part two, which must go on to page one, which is ultimately how you file your 8264. I'm sorry. Can you go back to, I don't know, maybe it's not related to it, but your friend took us to question 48. Yes, Your Honor. And that says, must a person registering a tax shelter that is substantial investment only by reason of an aggregation of all total investments in the section complete a separate 8264 for each investment constituting a substantial investment? And it says a separate 8264 must complete for each investment that differs from the other investments in a substantial investment with respect to any of the following. And then it lists all of these. So clearly the regulations do contemplate if there's an outlier in here, there's a separate 8264 required. Why isn't that sufficient? I wouldn't use the word outlier because one of the things that requires a separate form 8264 is if the principal asset is different and it's different throughout. It's sometimes foreign currency, sometimes domestic currency. It is. And if the tax shelter ratio is different, you must file a separate form 8264. The tax shelter ratio was different throughout these. And that is clear from the record. That's true. I don't know where that gets you. That means that your client should not just have filed one 8264 form, but should have filed maybe 100 of them as required by the regulations. What relevance does that have to whether or not these two things created by you all were tax shelters that should have been registered? If, first of all, Your Honor, it's my client's position on the merits that these were not tax shelters under the statute because of the tax shelter ratio test not being met, because of substantial investment. There are arguments and reasonable cause. There are arguments on the merits as to why these were not tax shelters, but that's on the merits. Here we're talking about can you pay on a divisible basis for one transaction or two transactions and satisfy the jurisdictional requirement? That is what this case is about. Can I ask you just a basic question? Sure. If we were to conclude that it was you had to file a separate tax shelter form for each of these two entities and those are the tax shelters we were talking about, then the only issue, the issue is whether or not you appropriately, as required under law, registered your tax shelter. Isn't that sort of begin and almost end the case with respect to your client? And that issue deals with what your client did, not with respect to each of the divisible transactions at issue here, right? No, Your Honor, and that's because the government is arguing because we paid a divisible portion for two transactions, the government is arguing that this is not divisible, that you only had two, one or two failures, that you should have filed one or two 8264s. That's the jurisdictional argument. Our argument is that if the government is right and these were tax shelters, you had to file an 8264 for each one of the transactions that makes this divisible, that establishes jurisdiction for the court and according to this court in Sincast, when a taxpayer sues for a refund based on page 1366 of Sincast, when a taxpayer sues for a refund based on a divisible refund claim, it is meant to test the validity of the entire assessment. That is what this case is about, merely establishing jurisdiction because this penalty if it was imposed correctly and that is the issue on the merits, that had to occur when a form 8264 was required to be filed for each and every one. There is, I said it before, I will say it again, it was impossible. If you look at this form, it was impossible to fill it out once and report everything that was required throughout the four-year period. Thank you, Your Honor. We thank both sides.